## MATTHEW T. GISBORN, Appellant, v. S. B. MIL-NER and GLENN R. BOTHWELL, Respondents.

### No. 1532.    (79 Pac. 556.)

1. **Contracts: Construction.**
   Plaintiff, by a contract with defendants, agreed to sell them a half interest in a mining property; advances to be made by defendants for litigation and improvements to be applied on the purchase price. By a subsequent contract the advances were to be repaid defendants, and by a third contract a corporation to which the property had been conveyed did "assume and agree to pay . . ." the moneys advanced "as per" the first contract. *Held,* that the phrase "as per," etc., referred to the advancements, and did not qualify "assume and agree to pay," and hence did not abrogate the provisions of the second contract providing for repayment of the advancements.

2 **Same: Appeal: Review of Evidence.**
   On appeal in a law case the court does not pass on the weight of the evidence when there is a substantial conflict, or when competent evidence supports the findings.

### (Decided February 10, 1905.)

Appeal from the Third District Court, Salt Lake County.—*Hon. C. W. Morse,* Judge.

Action to recover a certain sum of money. From a judgment in favor of the defendants, the plaintiff appealed.

AFFIRMED.

*Messrs. Sutherland, Van Cott & Allison* for appellant.

*Messrs. Booth, Lee & Ritchie* for respondent.

LEWIS, District Judge.   Plaintiff brought this action to recover from defendants $9,680 and interest; alleging that defendant Bothwell had received as trustee for plaintiff said amount, and that said defendants held and converted the same to their joint use. Defendants deny the trust and deny the conversion, and set up that said money was received by Bothwell as trustee for the Geyser Mining Company, and paid out according to the trust.   The controversy arises out of certain contracts between plaintiff and defendants concerning certain property situate at Mercur, Utah, and which property finally became the property of the Geyser- Marion Gold Mining Company.   The money was received by Bothwell as dividends from the Geyser-Marion Gold Mining Company on stock owned by Gisborn, and held by Bothwell as trustee to receive the dividends and pay the same, or so much thereof as was necessary, to the Gey ser Mining Company, for the purpose of paying the debts of the Geyser Mining Company.   Bothwell, as trustee, paid the amount to the Geyser Mining Company, and the Geyser Mining Company paid the same to Milner and Bothwell on the item of $7,056.90, hereinafter referred to, and interest on said amount.   In the court below, judgment was rendered in favor of the defendants.

The first contract is known as that of August 27, 1894.   By this contract Gisborn, as party of the first part, agrees to sell to Milner and Bothwell, as parties of the second part, an undivided one-half interest in certain mining claims at Mercur, Utah, upon the following terms and conditions, to-wit: $1,000 cash, the receipt of which was acknowledged.   The second parties agree to advance the necessary money and furnish bonds with said first party to start and keep in progress any suits at law deemed necessary to protect the rights of parties to said contract in certain mining claims described. Second parties also agree to advance money needed to develop mines so that a sufficient amount of ore will be ready at the completion of a certain mill mentioned.

Second parties agree to move to said mining claims a certain mill, and set the same up on said mining claims, in good running order. Second parties also agree to build a certain road, and do certain work upon a certain spring. "It is agreed by both parties that the price allowed for said mill, building road and work on spring shall be $10,000.00. It is understood and agreed that first party agrees to sell said one-half interest for thirty thousand dollars, one thousand dollars of which is this day paid by second parties; that one-half of all money advanced by second parties in development work on mines or for litigation or any other expenses for the benefit of said mining claims, as well as one-half of the expenses of the mill, etc. mentioned at $10,000.00, shall be applied with ten per cent. interest per annum on the twenty-nine thousand dollars balance of the purchase price. It is hereby agreed by both parties that all moneys received from the sale of the proceeds of said mill shall be used in the following manner: First, pay all expenses of operating said mill and mines; second, pay all litigation expenses; third, any other remaining money to be divided equally between said first party and said second parties. It is agreed that this settlement shall be made each month on a certain day to be agreed upon by the parties hereto. It is agreed that the above shall be the basis for each month's settlement, up to the time when second parties shall have received an amount equal to all moneys advanced by them, as well as the ten thousand dollars for mill, etc., with interest at ten per cent. per annum. All subsequent profits being all profits after expenses are paid to go to first party until such a time as one-half of said net profits shall have paid said first party, the balance of the purchase price above mentioned." The contract further provides for the placing in escrow of the deed for said interest, and has other provisions.

The second contract is that of December 21, 1894. Bothwell and Milner, parties of the first part, lease to Gisborn, party of the second part, an undivided one-

half interest in the mill and mining property mentioned in the contract of August 27th for a period of one year from date, upon the following terms and conditions, to-wit. "That the said party of the second part will, on the 22nd day of December, 1894, take out of escrow and surrender and deliver to the said parties of the first part the deed for the undivided one-half interest in and to all of said above described mining claims and property mentioned in a certain contract entered into by and between the parties hereto on or about the 27th day of August, 1894, and deliver the same to the said parties of the first part, and that by so doing it is hereby agreed that the amount of money mentioned in said contract to be paid by the said parties of the first part to the said party of the second part for the undivided one-half interest in said property shall be considered fully paid, and no further claim shall be made by the said party of the second part against the said parties of the first part. . . . At the end of this lease the said parties hereto hereby agree that all moneys received from the sale of the proceeds of said mill, or all proceeds of said mill, or the sale of ores extracted from said mining claims and all profits in any way realized shall be applied and used in the following manner, to-wit. First, to pay all expenses of operating said mill and mines; second, to pay all past litigation connected with said mines and moneys advanced for expenses and improvements by said Bothwell and Milner and with ten per cent interest. After the above has been paid in full, then an undivided one-half of all profits and proceeds shall go to pay for the said mill and expenses of erecting the same until said parties of the first part shall have received therefrom the sum of ten thousand dollars, together with interest thereon from the 22nd day of December, 1904, until fully paid, at the rate of ten per cent. per annum, and the balance of the profits shall be divided equally, that is to say, one-half thereof shall go to the parties of the first part and one-half to the said party of the second part. It is further understood and agreed that after

the delivery by the party of the second part of said deeds to the parties of the first part above mentioned the following clause in the agreement of August 27th, 1894, between the parties hereto shall be of no further force or effect, to-wit: 'It is understood and agreed that first party agrees to sell said one-half interest for thirty thousand dollars, one thousand dollars of which is this day paid by second parties; that one-half of all moneys advanced by said second parties in developing work on mines or for litigation or any other expenses for the benefit of said mining claims, as well as one-half of the expenses of the mill etc., mentioned at $10,000.00, shall be applied with ten per cent. interest per annum on the twenty-nine thousand dollars, balance of the purchase price.' "

The third contract is that of April 20, 1895. This contract recites the incorporation of the Geyser Mining Company, and the conveyance to it of the mill and mining property mentioned in the two former contracts. It provides for the cancellation of the lease of December 21, 1894, and the giving of a new lease in lieu thereof by the Geyser Mining Company. The contract also contains the following paragraph, to-wit:

"And it is further understood and agreed that the said Geyser Mining Company assume and agree to pay out of the profits of said company no debts, except the sum of ten thousand dollars due for mill and any unsettled litigation expenses now owing by said Gisborn and said Bothwell and Milner, and the account of said Bothwell and Milner for money advanced for litigation and development, etc., amounting to the sum of $7,056.-90, as per their contract dated August 27th, 1894."

The principal question in this case is as to the effect to be given to the last words quoted from the last contract, to-wit, "as per their contract dated August 27th, 1894." The plaintiff contends that these words qualify "assume and agree to pay," and were intended to abrogate the provisions of the contract of December 21st providing for the repayment to Both-

well and Milner of the money advanced by them for litigation and development, and to revive the provisions of the contract of August 27, 1894, providing that such money so advanced by Bothwell and Milner should apply on the purchase price of the interest agreed to be conveyed by Gisborn to Bothwell and Milner. If this construction is to be given to the contract, it would have the effect of making Gisborn, the creditor of the Geyser Mining Company to the extent of $7,056.90, and the "account of said Bothwell and Milner for money advanced for litigation and development, etc., amounting to the sum of $7,056.90," immediately becomes the account of Gisborn. The only surrounding circumstances shown on which plaintiff asks that his construction be given to this clause are that plaintiff is quite an aged man, while defendants are in the prime of life, and that plaintiff insisted that these words be added to the contract before he would sign it. It would seem that the words were written by Gisborn's attorney, so that plaintiff is in no position to claim a strained construction favorable to him simply because he desired them inserted. If he intended that a credit of more than $7,000 should be transferred from defendants to himself, he should have inserted such a provision in apt words, and not left it to a construction of an ambiguous sentence. Words are constructed most strongly against the party using them. But the paragraph can hardly be said to be ambiguous. "As per their contract dated August 27th, 1894," plainly qualifies the word "advanced," and is used simply to identify the account of Bothwell and Milner. They were not inserted when the contract was originally drawn because defendants evidently deemed the account already sufficiently described.

The other errors complained of by plaintiff grow out of the construction placed on those words by the trial court, and are disposed of by following the trial court's construction of the contract; and, following this construction of the contract, the record

contains evidence to support all the findings of the lower court. This is a law case, and on appeal this court does not pass upon the weight of the evidence when there is a substantial conflict, or when there is competent evidence to support the findings.

We find no error in the record. The judgment is affirmed, with costs.

BARTH, C. J., and McCARTY, J., concur.